Next case is Airbus S.A.S. v. Firepass Corporation 2019-18-03. Mr. Chapman, when you are ready. May it please the Court. My name is Mark Chapman. I'm here for the appellant Airbus. Airbus is appealing the Board's decision to reverse the examiner's obviousness rejections of new claims 91-94. The Board's decision was based solely on its new finding that the Cotley or prior art reference is not analogous art. And I'd like to focus on what we think are the two most important errors that the Board made in reaching that decision. The first error was that the Board refused to consider important, relevant evidence of the knowledge of one of ordinary skill in the art. And specifically, what the Board did was it refused to consider the examiner's findings, which were based on four prior art references, which demonstrated that those of ordinary skill in the art knew that breathable hypoxic air is fire preventive and fire suppressive. And the Board refused to consider this knowledge solely because those prior art references and the examiner's findings were not cited in the rejections of claims 91-94 on appeal. And our argument is that that's contrary to this Court's decision in Randall. Your view is that those four references reveal the knowledge of a person of ordinary skill in the art, as you're undergoing the inquiry of whether these other two references are analogous or not. That's correct. Exactly. And in Randall, the facts of Randall are very close to this case, because in that case, the Board also failed to consider evidence of knowledge of one of ordinary skill in the art that was documented in prior art of record. But that was not an analogous art case. That was a different inquiry under the obviousness consideration. That's correct. It was an appeal of an obviousness rejection, but the specific sub-obviousness issue was whether there was a motivation to combine. So it was not an analogous art issue, but the point that the Court made was that you have to consider evidence of the knowledge of one of ordinary skill in the art. It's the backdrop for the entire obviousness analysis, and that prior art is perhaps the best evidence of what the knowledge of one of ordinary skill is. So we think under Randall, and just the general notion that obviousness has to be analyzed from the perspective of one of ordinary skill and take into account what he or she knows, that the Board, in our case, erred by refusing to consider this undisputed knowledge of one of ordinary skill in the art. And the error that they made in that regard was prejudicial with respect to both of the analogous art tests. For the reasonably pertinent test, given that one of ordinary skill in the art knows that breathable hypoxic air is fire preventive and fire suppressive, when one of ordinary skill in the art is setting out to solve the problem of how do you prevent and suppress fire in a human-occupied enclosure, they would consider prior art that discloses producing breathable hypoxic air. This is a factual question, though, right? Correct. So you've got two positions you've said so far today. One is that the Board erred in its legal test that it applied because it didn't consider the four prior art references considered by the examiner to determine what a poser knows. But also, separately, there's a fact question of once you use that proper standard, are these references analogous or not? That's right. And I think the point I'm trying to make is that had the Board properly considered the knowledge, had it not refused to consider that, it would have switched the outcome 180 degrees. Because once it's understood that one of ordinary skill in the art knows that breathable hypoxic air is fire preventive and fire suppressive, and if they are trying to solve the problem of how to prevent and suppress fires, prior art that discloses producing breathable hypoxic air is pertinent. Counsel, is it correct that the Kotler reference relating to hypoxic training was relevant to invalidating Claim 1 of this patent? The examiner rejected Claim 1 as anticipated by Kotler, and it also rejected Claim 1 as obvious based on Kotler in combination, I believe, with another reference. So was it your argument that it has to be reasonably pertinent to another claim of that same patent? I think that's part of the overall story here that Kotler is so close to Claim 91. The only limitations that the examiner found not to be disclosed in Kotler that are in Claim 91 are two elements. One is about reducing the humidity of the intake air that goes into the oxygen extraction equipment, and the second one is about having a filter for that intake air. Everything else, it's already been decided that Kotler discloses that. And when the examiner rejected Claim 91, that was understood and no longer in dispute. Remember that we are back in this Court for the second time. The rejections of Claim 91 happened after the remand from this Court. At that point, Claim 1 had been rejected based on Kotler. They had appealed to the Board. The Board had affirmed. They did not appeal that to this Court, so it was no longer in dispute that Kotler discloses all the elements of Claim 1. So when the examiner turned to look at Claim 91, he understandably focused on, well, what are the differences between – what are the new limitations in Claim 91 that we haven't already addressed before? So it's a syllogism. That which is reasonably pertinent to Claim 1 is reasonably pertinent to Claim 1 plus two more limitations. I think that's fair, yes. And I think when you look at what Kotler discloses, it discloses a piece of equipment. That equipment is used to produce breathable hypoxic air for a human enclosure. Claim 91 claims the same structure except for those two differences that we just mentioned. Both of them are – it's a machine to produce breathable hypoxic air for a room. It's true that the 752 patent states that the purpose of it is to suppress and prevent fires, and that Kotler does not say that because his patent was directed to using that for a different purpose. But the breathable hypoxic air that Kotler produces is also fire-preventive and fire-suppressive. And 1 of Ordinary Skill would have known that. And just circling back to my original point, the Board wouldn't consider that evidence of the knowledge of 1 of Ordinary Skill in the art. And that's why we think, even though the Board's findings are reviewed for substantial evidence, when it fails to consider critical relevant evidence, we submit that the decision just has to be vacated so that it can go back and consider that evidence. This case, how long has this reexamination been pending? I mean, it seems to be on the slow track. February 23rd, 2011, so eight and a half years. And the reason for that is, as I mentioned, we've been to this court in 2014, I believe it was. There was a first set of rejections on the original claims. They submitted a whole bunch of new claims. They were all rejected except for the ones that are now at issue because the examiner at the time thought he had to find a substantial new question of patentability for those new claims. This court corrected him on that. He did not. And so we went back and dealt with that subset of claims in a second round of reexamination. One other thing about the Board's error with respect to the refusal to consider the knowledge, it's also prejudicial with respect to the field of endeavor test. So prior art can be analogous art if it's within the field of endeavor of the patent. And here, the way you analyze that is you look to see whether the embodiments in the prior art reference and in the patent have essentially the same function and structure. That's what the Biggio case says we should do. Here, once it's understood that one of ordinary skill in the art knows that breathable hypoxic air is fire-preventive and fire-suppressive, then he would appreciate that Cotlier performs essentially the same function as the 752 patent. Do you think that you have a stronger case under the reasonably pertinent to the particular problem prong? I'm sorry, I missed the beginning of that. Do you think you have a stronger case under the reasonably pertinent to the particular problem prong? I think we have a strong case on reasonably pertinent. I think we also have a strong case on field of endeavor because there's no dispute here that the structure is virtually identical. The only— Field of endeavor, one might look to the titles of the patents, which are quite different. I agree with that, but you can't look just at the titles. You also have to look at the description of the invention subject matter and what's the structure and function of the claimed embodiments. And here, we just discussed that Cotlier was found to anticipate Claim 1 and to virtually anticipate Claim 91 except for two limitations, which is why we're having a discussion about obviousness. And the point about the knowledge of one of ordinary skill in the art is that when that is considered, when it's understood that breathable hypoxic air is fire-preventive and fire-suppressive, then the machine in Cotlier has the same function as the machine in the 752 patent. Even though it doesn't describe that function— Could you make this particular argument below? I mean, in relying on those four references, do you emphasize that they were also extremely important to the termination of the field of endeavor? We certainly did so in our rehearing petition. I don't remember if we did so in our respondent brief before the board. We definitely emphasized the evidence of the knowledge of one of ordinary skill in the art and how Firepass's argument that Mr. Cotlier had discovered this, that it could be safe for breathing and also fire-preventive and suppressive, was just not true. That was well known. Counsel, you're into your rebuttal time. You can continue or save it. I just want to make one very quick point about another error that we think the board didn't. It's a procedural point. We think that the board should have remanded to the examiner to permit Airbus to submit evidence in response to this brand new finding by the board that Cotlier is not analogous art. This was a new argument that Firepass made in the board appeal. It was never presented to the examiner. So we had no opportunity to submit evidence, such as expert evidence, on the question. In the board appeal, we couldn't submit evidence because you can't submit new evidence on appeal. So under the APA, we think we just weren't given a fair opportunity to respond and submit evidence. And so to the extent the decision isn't overturned on its merits procedurally, the case should have gone back to the examiner so that both parties could argue the point and submit evidence, which never happened. Mr. Thompson. May it please the Court. My name is Roger Thompson. I'm appearing on behalf of the Appellee Firepass Corporation. This court sits in review of the final judgments of the PTAB under the Administrative Procedure Act. The final judgment of the PTAB in this case was that the rejection proposed by Airbus, adopted by the examiner, failed to make out a case of obviousness. The evidence which supported that relates to the field of endeavor, and the substantial evidence in the record addressed in my brief shows that there is substantial evidence showing what the fields of endeavor were for both the claimed invention and for the primary reference Cotillard. As Judge Lurie pointed out, the titles are very different, and while that's not a determining factor, they just don't appear to relate to the same fields of endeavor. Now, my opponent has suggested that the PTAB erred in refusing to consider evidence of knowledge of the person of ordinary skill in the art. However, that evidence was not presented to the examiner either because it was not part of the underlying rejection. Under KSR, all elements of an obviousness rejection have to be articulated expressly in the record. What if it's just evidence of what a posa knew? I mean, there's case law going back for a long time saying that a posa is presumed to have knowledge of the prior art, and so you can look at the prior art to figure out what they knew. That's absolutely true, Your Honor. But in the context of making out an obviousness rejection, it's necessary to articulate how you get to the ultimate conclusion. Setting aside the obviousness, the references that are relied on for the obviousness determination, you are saying that there is never a circumstance in which prior art could be identified for purposes of showing what a person of ordinary skill in the art had knowledge of? Is that your position? I'm not sure I understood the question. Okay, let me ask you again. Okay. Is a court or the PTO ever allowed to consider prior art outside of the prior art identified for purposes of obviousness or anticipation? Could they look at other prior art just to understand the knowledge of a person of one of ordinary skill in the art? If that was the case, Your Honor, then the grounds of rejection would be different than A in view of B. It would be A in view of B in light of the teachings of C, which help.  Because in Randall, the issue was very different, and that was addressed in my brief. Page 31-2. In Randall, as the board itself distinguished, this distinguished because there was no dispute or issue as to whether the main reference applied was in the same field of endeavor. So your view is because Randall didn't involve a question of whether something was analogous art or not, it's distinguished. In part, because the essence in Randall was that there was no real question of whether these references were pertinent or not. But here the ultimate issue is, why would one of ordinary skill in the art have looked to the Cotillard reference as a starting point for this analysis? I understand. I don't know that I agree with you. I mean, Randall does look at a different part of the chaos art obviousness inquiry. But I'm not sure that I agree with you that I'm not allowed to consider it as informative for purposes of determining what a person of ordinary skill in the art knew, for purposes of determining whether a reference is directed to a pertinent problem. Can I ask a question about the facts of Randall that I don't remember? I'm looking right now at footnote 3 in Randall, which is talking about the references that the court was considering and the board was considering in Randall. And it says, although the examiner did not articulate this analysis, Randall, as appellee before the board, was entitled to defend the examiner's rejection to the board because it had presented this in the record. So I guess I don't know the facts of Randall very well at all. But I guess maybe I'm mistaken in reading this footnote this way. But I guess I was thinking that the four prior art references in Randall were actually presented to the examiner. The examiner just didn't rely on them in his rejection. And then what our federal circuit was saying is that the board is allowed to because they were previously presented. I don't know if those are the right facts. I'm reading Randall. I haven't gone deep into it. Do you know whether or not? I don't remember off the top of my head, Your Honor, what exactly one footnote says in one case. But I will point out that in this case, the references had not been applied, that the counsel now wants to use to support its argument, had not been applied against Claim 91 in this rejection. With the examiner. With the examiner. They were never introduced before the examiner as providing information that would help him reach the other claims. Not Claim 91. For other claims, yes. That's my understanding. Do I understand correctly that the board's rationale for not considering these references was that none of these four references was used to support the rejection? Yes, Your Honor, because. They didn't find waiver because they weren't presented to the examiner. Instead, they said the same reason you said previously, which is you're only allowed to look at the references that are being relied on, which here is cop waiver. You're only allowed to rely on the statement of the rejection that the examiner issued, that the examiner adopted based on Airbus's proposal. And if it was necessary to have something other than Cotley are by its four corners to reach the obviousness conclusion, then it must be necessary that it's in the record because otherwise the fire pass wouldn't have had the opportunity before the examiner to address the issue of what would constitute a proper grounds for opposing the rejection. Can I just ask for clarification from you? Do you agree with Judge Stoll's representation that the board limited its complaint to the fact that they weren't in the rejection? Or how do you read appendix page 29 when the board says, we agree with the patent order that the requester now offers a new analysis of how it wished it had made its initial rejection seven years ago, two appeals and one trip to the federal circuit and countless amendments and arguments ago. However, the actual rejection of appeals, what must be evaluated. This is an inter-parties proceeding and the rejection at issue was proposed by the requester. So I guess I just don't know whether or not it's clear to me that the board said that because the examiner didn't rely on this as opposed to the applicant didn't make it is the only reason. It seems to me that they're saying the applicant is the one who proposed the rejection and the applicant didn't ever mention these and the examiner accepted what the applicant said. I mean, the requester proposed it, not the applicant. I said applicant. Thank you for correcting my misspeaking. So the ultimate issue is what the examiner did. The examiner had the right to accept or not accept. Here it seems to me the board is saying the examiner didn't issue its rejection citing these four references. And they're also saying because the applicant in its requesters, a requester. Thank you. The requester in its IPR didn't ask it to look at these references, which regard with regard to this. Correct. So it's a kind of board. I think the board in this case is saying I would agree with that. Counsel, I assume you agree that the Cotlier reference was considered relevant and important in invalidating claim one. With respect to anticipation. Yes, Your Honor. But the anticipation rejection and an obviousness rejection, as we all know, are very different. Yes, but we're talking about what's reasonably pertinent. And so that Cotlier reference has to have been reasonably pertinent. I would disagree. To a claim that has basically the same system plus two more limitations. I would disagree, Your Honor, because in an anticipation analysis, we don't consider an analogous argument. Well, not decisive, but why not reasonably pertinent? Same subject matter. Because the issue of reasonable pertinence to the problem being solved by the inventor. The inventor will, when putting together any combination invention, will take bits and pieces from the prior art. And the inventor will take a machine which somebody else uses for something else for another purpose and perhaps use it in an inventive way. This is not a method claim. No, it's not. But it's the structure. You would still incorporate the entire body of the machine into the combination. Can I ask whether or not it's possible that your answer to Judge Lurie might want to include the following response? And you can tell me whether you agree or disagree. Which would be just because something is relevant to one claim of a patent doesn't mean it's relevant to another. Even when we're talking about independent and dependent claims. How about I propose an example? Claim one says all mammals, humans, animals, et cetera. Claim two says skunks. Maybe claim two, limited to skunks, dependent claim, may be a reference with regard to humans or birds or fish or something. Maybe that could be relevant to claim one because it's so broadly written. But maybe that's not actually relevant to claim two because it's so narrowly written. Is that possible? I would agree with Your Honor on that. And I will just point out that each claim is entitled to its own analysis and its own separate consideration. And if the examiner – I don't know in this case whether what I just said is true, but I'd be worried about a rule of law that went so broadly as to say because something is relevant to an independent claim, it therefore is necessarily relevant to a dependent claim. This is an independent – 91 is also written in independent form, just so the record's clear. Thank you. But they are two independent claims with different limitations. Do correct me on my misspeaking very nicely. I want to applaud you for that. Thank you, Your Honor. But both claims are supported by the same specification. That would be true for every claim of the patent under any circumstances. If not, you'd be having a whole different set of discussions about rejecting the claims. One point I would like to address that my learned opponent has raised is that it essentially isn't fair that the examiner didn't have the opportunity to address these issues because they weren't supposedly raised during prosecution and that the board should therefore have remanded rather than simply reversing. However, the examiner did have the opportunity in response to the brief on appeal before the PTAB to address the issues raised in the opening brief by Firepass. And the examiner's answer simply incorporated the RAND below and did not add any argument or any analysis to the initial consideration. So the examiner had the opportunity at that time to say, you know what, maybe I was a little sloppy. I could have done a better job with the rejection, so I'll take it back, issue a better rejection, and we wouldn't be sitting here right now. But the examiner didn't do that. The examiner took the position that the RAND was fine as it was and the final rejection would stand as it was. And so the examiner has had the opportunity to address this very issue and declined to do anything about it. You're looking puzzled, Judge Stahl. No, I'm not puzzled at all. Okay. Thank you. One thing when considering the reasonable pertinence of the Cotillard reference to claim 91, et cetera, is that Cotillard says nothing about fire. We should keep that in mind. As Judge Lorry pointed out, the title of the invention is very different for the reference. It's athletic training equipment, as opposed to the claimed invention, which is for fire prevention and suppression. And the Cotillard patent, the 652 patent, in fact, doesn't even use the word fire in it whatsoever. So what one of ordinary skill in the art would glean from reading Cotillard should keep in mind that that is not something that is taught either expressly or implicitly in Cotillard. I have nothing further on my end. Unless the Court has further questions for me, I would concede my last minute and change. I think you have told us everything that is reasonably pertinent. Thank you, Your Honor. Mr. Chapman has some rebuttals on. Mr. Chapman, one of the things that came out in that last bit of argument was that the examiner did not have the four references in order to be able to consider them. And I know the examiner wasn't even considering analogous art because that argument hadn't been made. And so how do you respond to that? I mean, did the Board actually say we're not going to consider this, not only because it's not pertinent to this inquiry, but also because the examiner didn't get to consider it? Let me back up and just say you're correct when you said just a minute ago that the issue of whether or not Cotillard was analogous art was never disputed before the examiner. There were several rejections based on Cotillard as the primary reference, obvious misrejections, not just the anticipation rejection. Firepass constantly never questioned that it was available as prior art. They just argued that it didn't have certain claim limitations. There was no motivation to combine. So there was no reason for the examiner in analyzing the rejections for Claim 91 and 92, 93, 94 to address the issue of whether Cotillard was analogous art or all of this knowledge because it wasn't relevant to a disputed issue. Now, in our submission, there was some question about whether we presented these references. All these references, the four of them, were presented in other grounds that were relied on. So the examiner's findings were made in the context of other rejections of other claims, which there were about 100. But they were of record. The prior art is all of record. Examiner's findings are of record. And in Randall, it was similar in the sense that the prior art in question was not involved in the specific rejection on appeal but had been discussed in other contexts within the reexamination. So there's no difference in my submission between Randall and this case. The other thing is I know Firepass and the board criticized the examiner's rejection and our proposal of that. But were these four references introduced to the examiner in any way with regard to the particular claims? That's exactly what I was about to get to. So in our proposed rejection of Claim 91, we had a claim chart. And our comments discussed both referred to both Gustafson and the 1167 report, which are two of the four references that we're now relying on. And we cited those references when we were addressing how the preamble of Claim 91, which is the only part of Claim 91 that mentions preventing or suppressing fires, was obvious. And the point that was being made was that the Cotelier 652 breathable hypoxic air environment prevents and suppresses fires. And then we pointed to the knowledge of one of ordinary skill as documented in Gustafson and the 1167 report that documents that. And if you'd like, I can give you the citation for that. It's Appendix 2548 to 2550. And that was for Claim 91, the independent claim at issue now. Back at the beginning. 2548 and 25 what? 2548 to 2550. Three pages. And then back in the original reexamination request, we also had a more fulsome discussion about this exact issue with respect to Claim 1 in the request. And so I could look up the sites for those. I didn't have a chance, but it's in our appendix. It's in our request and in the claim charts for Claim 1 that we submitted with the original request, which pointed the same evidence in Gustafson and the 1167 report. But I think that Randall stands for the proposition that that doesn't really matter. What matters is, is it a record and is it relevant? And if it is, it has to be considered. Because when you're analyzing obviousness, the knowledge of one of ordinary skill in the art is a foundational fact that has to be considered at all stages. And I don't think there's any dispute that in determining whether a prior art reference is analogous art, that somehow you don't assess that from the perspective of one of ordinary skill. You do. You have to. And so you have to take into account what they knew. And our submission is that when you do that, it's clear that Cotleyer is reasonably pertinent and that the board erred when it refused to consider that evidence. I see I have nine seconds. No, I think you were in arrears. So we will conclude the argument in case of submission. Thank you very much. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.